# Syndicate Insurance Co. v. Catchings.

*Action on Fire Insurance Policy.*

1. *Agency; powers of a general agent.*—A general agent is one employed to transact all of the business of his principal of a particular kind, or in a particular place; and the powers of such an agent are *prima facie* co-extensive with the business entrusted to his care, and can not be narrowed by secret instructions or limitations not communicated to the persons with whom he deals.

2. *Same; authority of local agent of insurance company.*—Where an insurance company establishes a local agency at a particular place, the acts, declarations, waivers and representations of such agent, within the usual course of the business, are binding upon the company, notwithstanding private instructions or limitations, unless the party dealing with the agent had notice of them.

3. *Same; when agent's authority a question for the jury.*—If the au-

thority of an agent and its extent is not evidenced by a written instrument, but rests in parol and is a matter of dispute, it then becomes a question of fact to be determined by the jury from the evidence.

4. *Insurance company; competent evidence of waiver of proof of loss by agent.*—Where, in an action against an insurance company on a policy issued through one of its local agents, who had authority to solicit insurance, countersign all policies issued through him and collect premiums, but had no authority to adjust losses or waive any part or condition of a policy, but it was not shown that these limitations of authority were ever communicated, directly or indirectly, to the plaintiff, or that he knew of them, evidence that upon plaintiff's attorney proposing to defendant's said agent to take such further steps or make such further proof of loss as was necessary under the policy, said agent told him the policy was all right and that further proof of loss was unnecessary, is competent evidence of a waiver of the proof of loss, and is not open to the objection of being incompetent because there was no evidence that said agent was authorized to represent the defendant in the settlement of a loss; since, whether the acts or declarations of said agent could, in such case, bind the defendant was a question for the determination of the jury.

5. *Same; evidence as to representations as to interest of assured.*—In an action on a fire insurance policy, which is defended on the ground, among others, that plaintiff made a false statement in his application, as to his interest in the property insured, evidence that, at the time of making the application, the plaintiff told defendant's agent, who issued the policy, and who was writing the answers in the application, the exact interest he had in the property to be insured, and that said agent wrote the answer incorrectly, is admissible; and the insurance company can not complain or avoid its policy by reason of such false statement contained in the application.

6. *General exception to court's general charge unavailing, unless whole charge erroneous.*—Where the general charge of the court is divided into sections, an exception thereto that "The defendant then and there severally and separately excepted to each and every section, and each and every paragraph of said charge, as given," is unavailing, unless the charge was erroneous in all of its propositions.

7. *Charges rightly refused, when they ignore certain tendencies of the evidence.*—Charges which ignore evidence tending to establish the facts relied on in plaintiff's replications to defendant's pleas are properly refused.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. JESSE M. CARMICHAEL.

This action was brought by the appellee, Julia Catchings, against the appellant, the Syndicate Insurance Company, of Minneapolis, Minnesota, and counted upon a policy of fire insurance, which had been issued by the

defendant to the plaintiff. On the summons and complaint issued in said cause there was endorsed the following acceptance of service : "As agents for the defendant herein named, and for such defendant, we hereby accept service of the within summons and complaint, and waive copy. L. Y. Dean & Co., Agents."

The complaint in this case is on a policy of fire insurance on a gin house and its contents, issued by the defendant company to the plaintiff below, and is in the form prescribed in the Code.

There were four pleas. In the first it was alleged that, on the 20th November, 1891, in the application made by the plaintiff to the defendant for insurance, and upon which application and the representations contained therein the policy of insurance was issued, the plaintiff, in response to the questions, if there was any mortgage or encumbrance on the property insured, or, if any other party was interested in the property, answered each question in the negative ; that said policy contained the provision, that "this entire policy shall be void, if the insured has concealed or misrepresented - in writing, or otherwise, any material fact or circumstance concerning this insurance or the subject thereof, or if the interest of the assured be not truly stated ;" that the answer of plaintiff was false in fact ; that at the time said applicawas made, and said policy of insurance was issued to her, the Scottish American Mortgage Company, Limited, of Edinburgh, Scotland, held and owned a mortgage on all the property covered by and embraced in said policy of insurance, and was interested in said property, which mortgage was executed by the plaintiff, on the 2d of February, 1891, and was in full force and effect at the time said policy was issued. In its 2d plea the defendant alleged, that by the terms of the policy sued on, it was provided that, "if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple, the entire policy shall be void ;" that the interest of the insured in the property embraced in the policy of insurance was not an unconditional and sole ownership ; and that, therefore, the defendant is not liable thereunder. In the 3d plea it was alleged that by the terms of said policy, it is provided, that "within sixty days after the fire, unless such time is

extended in writing by this company, the insured shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured and all others in the property, the cash value of each item thereof and the amount of loss thereon, all encumbrances thereon, all other insurance, whether valid or not, covering any of said property," and that, "No suit or action on this policy, for the recovery of claims shall be sustainable in any court of law or equity, until after full compliance by the insured, with all the foregoing requirements ;" that plaintiff never furnished to it, said proofs of loss, as required by said terms of said policy; and that, therefore, the defendant is not liable to plaintiff under the policy sued on. In its 4th plea the defendant alleged that as a part of the contract of insurance, the plaintiff agreed, "as a condition of said insurance, that she would keep in the room, with the gin-stand insured, and within ten feet thereof, one barrel full of water, and two buckets ;" but that at the time complained of, the plaintiff was not keeping, and had not for a long time kept in said room, and within ten feet of said gin-stand, the barrel of water and two buckets, as provided by said policy ; and that, therefore, defendant was not liable under said policy.

The plaintiff filed replications to said pleas. To the 1st and 2d pleas she replied, in substance, that the plaintiff applied to the defendant for insurance as per the policy sued on ; that during the negotiations for the insurance, and before the policy issued, the agent of defendant, duly authorized to take plaintiff's application for insurance, and who did take it, and who was authorized to deliver said policy and receive the premiums, was informed by plaintiff of all the facts and circumstances connected with plaintiff's title, ownership and interest in said property, and the land on which the gin-house is situated ; that plaintiff, by her agent, answered the questions in said application propounded to her by the agent of defendant, who wrote down the answers, and neither plaintiff nor her agent saw said application after it was signed, and did not read over the answers written down by defendant's agent, but that plaintiff's agent did fully and truthfully inform defendant's agent, at the time, of all the circumstances connected with her title, ownership

and interest in said property, and defendant's agent, being thus informed, wrote said answers as they appear in said application; and defendant having full knowledge of the title and interest of plaintiff in the property, issued said policy to plaintiff, demanded and received from plaintiff the premium thereon; that at the time of said application, plaintiff's agent informed defendant's duly authorized agent that said Scottish American Mortgage Company, Limited, had a mortgage given by plaintiff on the land on which said insured gin-house was situated, and with this knowledge and information defendant's said agent wrote said answers in said application and defendant issued said policy sued on and received the premiums therefor.

To plea numbered three, the plaintiff replied, in substance, that, within less than 60 days after the fire, the plaintiff called on the defendant's duly authorized agent, to make all the preliminary proof of loss required by said policy, and defendant then and there notified and informed plaintiff not to make the same, that it would not pay the amount due under said policy, if said proof was made, that it would resist the payment of said policy upon another ground, viz., that a portion of said property had been mortgaged, and by reason of this express waiver, said proof was not fully made.

To the 4th plea the plaintiff replied that the provision as to the barrel of water and buckets being kept within ten feet of the gin-stand, "was a mere promissory representation to do something in the future, which was not material to the risk, because the fire occurred at night, when all persons on the premises near said gin-house were asleep, or had retired for the night, and when the first person discovered, or could under the circumstances have discovered, the fire, it was too late to save the building with said barrel of water and buckets, or otherwise." The defendant took issue on these replications to the pleas.

The plaintiff introduced the policy of insurance sued on, purporting to have been issued by the Syndicate Insurance Company of Minneapolis, Minnesota, signed by its president and secretary, on the 20th day of November, 1891, and countersigned, at Eufaula, Alabama, on the same day—20th November, 1891—by "L. Y. Dean & Co., Agents."

The plaintiff introduced evidence tending to prove, that on the 20th day of November, 1891, she applied to Dean & Co., insurance agents in the city of Eufaula, Alabama, by her agent, Warren Cooper, for insurance of the property mentioned in the policy, and that they informed her, that a written application would have to be made ; that the same was made in the office of said Dean & Co. ; that said application was filled out by George M. Jordan, a clerk in the office of said Dean & Co., who wrote down the answers of plaintiff's agent, but they were never read over to him, and said Cooper never saw them again until the trial of the case ; that said clerk collected insurance premiums, made out applications for insurance, solicited insurance, and did any thing else that Dean & Co. requested him to do, in connection with the insurance business ; that while the application was being filled out, E. M. Cargill, one of the firm of Dean & Co., was at work at his desk in said office, within a few feet of where said Cooper and Jordan were filling out said application, and remained there the whole time said application was being made out, and that L. Y. Dean, the other partner, was in the office a part of the time and heard a part of the conversation between Jordan and Cooper, and told Jordan that he knew the gin-house was in good condition ; that shortly after that, she received the policy from Dean & Co., and paid the premium to them; and on the 20th of January, 1892, all the property insured was destroyed by fire, about 9 o'clock at night, after plaintiff and her agent had retired ; and when first discovered, the fire was too far advanced to be put out, or for any one to get near the burning building ; that on the next morning after the fire, her agent came to Eufaula and notified said Dean & Co. of the fire and of the burning of said insured property, who told him that they would notify the company of the loss, and that when so notified it would send an agent and look after and adjust the loss; that the agent saw Dean & Co. after that, and they said they supposed the company was behind with their work, was the cause of the delay, but that an adjuster would be sent.

Plaintiff's evidence further tended to show, that some time in March, 1892, her attorney, Wm. Harrison, came to Eufaula, and saw L. Y. Dean of the firm of Dean & Co., and told him he had plaintiff's policy, and had come to see about it, and to see if any further steps were neces-

sary to be taken by plaintiff under said policy, and that plaintiff was ready to give any further notice, and make proof if the company required it; and Dean told him that the policy was all right, and no doubt the insurance company would pay the loss as soon as the adjuster came down, and the adjuster was then in Coffee county, Alabama, and would no doubt be up in a short time; and said Dean also stated, that he had received notice of the loss, and no further notice or proof was necessary. The defendant objected to this evidence, on the grounds, that there was no evidence tending to show that Dean & Co. were the authorized agents of the company to represent it in the adjustment and settlement of the loss, or that they had the authority to represent said company in its adjustment and settlement; and that it was illegal, and incompetent to bind the defendant. These objections were overruled, and defendant excepted.

There was also evidence tending to show the value of the property insured. No question was raised, if the plaintiff was entitled to recover at all, that she was not entitled to recover the full amount for which she was insured under the policy.

The defendant introduced the application for insurance, signed in the plaintiff's name by her agent, W. S. Cooper, on the 20th November, 1891, and among the questions asked and answered were the following: "Is the building mortgaged or encumbered?" "No." "Is any other party interested in the property?" "No." Defendant introduced other evidence tending to show, that the answers were written by the clerk as they were given to him, and that said Dean & Co. was a firm of insurance solicitors composed of L. Y. Dean and E. M. Cargill, who only had authority from the defendant to solicit insurance, and countersign all policies issued through their agency, and to countersign the policy in this case, when issued by defendant; that after the policy sued on was delivered to plaintiff they had no further authority to adjust or settle in any manner any loss under the policy and no authority to alter, change or waive any part or condition in the policy, and had no authority whatever, in the matter, after the policy was delivered by them to the plaintiff; that plaintiff never kept two buckets in the same room with the gin-stand, but did keep one, and a barrel of water within the required distance.

The defendant also offered a mortgage executed by the plaintiff to the Scottish American Mortgage Company, Limited, of Edinburgh, Scotland, dated the 2d of February, 1891, to secure a note of $5,000, payable in five years from date, with five interest coupons, payable each year for $400, each, which mortgage embraced the land on which said insured gin-house stood, together with all the other personal property insured.

In rebuttal, plaintiff introduced evidence tending to show, that at the time her said agent, Cooper, made the application for the insurance, and when the question in said application, "Is the property mortgaged or encumbered in any way?" was asked, her agent answered, "that the property itself was not mortgaged, but then and there stated, that the land on which the gin-house stood was mortgaged to a loan company." Defendant objected to this evidence, on the ground that it seeks and tends to contradict the terms of the written application; that it seeks to vary and change the written application by parol; that defendant was not informed of said facts, and had no notice of the same. The objection was overruled, and defendant excepted.

The defendant, after the evidence was all in, made a motion to exclude from the jury the evidence introduced by the plaintiff, as to the conversation had between her attorney, Wm. Harrison, and L. Y. Dean, on the same grounds taken to its introduction in the first instance, but the motion was overruled, and the defendant excepted.

Upon the introduction of all the evidence, the defendant requested the court to give the following written charges to the jury, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe all the evidence in the case, they will find a verdict for the defendant." (2.) "If the jury believe from the evidence in the case, that the plaintiff, at the time she applied for the insurance in the policy sued on in this case, agreed with defendants that she would keep in said room and within ten feet from gin-stand, one barrel full of water and two buckets, and if the jury farther believe from the evidence that the plaintiff did not keep said two buckets of water in said room on the day the fire occurred, and prior thereto, (after the issuance of the policy), then your verdict will be for the defen-

dant." (3.) "If the jury believe from the evidence in this case, that the plaintiff in the case, did not, within sixty days after the fire, render a statement in writing to the defendant company, sworn to and signed by said plaintiff, as required in lines 69, 70, 71, 72, 73, 74, 75, 76, and 77 of the policy sued on and in evidence, then the jury will find in favor of the defendant." (4.) " If the jury believe from the evidence in the case, that at the time the plaintiff applied for the insuarnce, she stated that the property upon which the insurance was sought was not mortgaged or encumbered, and that said insurance was made on said application, and if the jury further believe from the evidence, that the land upon which the gin-house stood, and which said gin-house was sought to be and was covered by the insurance, was covered by a mortgage or deed of trust or other valid incumbrance, then your verdict must be for the defendant." (5.) " If the jury believe from the evidence in this case, that at the time the policy of insurance sued on was applied for, and said policy was issued. that the plaintiff was not the unconditional and sole owner of the property insured, then your verdict will be for the defendant." (6.) " If the jury believe from the evidence, that at the time of the issue of the policy, the land on which the gin-house building stood was incumbered by a mortgage which the plaintiff had made, then the jury will find a verdict for the defendant."

There was judgment for the plaintiff, and the defendant appeals, and assigns as errors the several rulings of the court upon the pleadings, the general charge given by the court, and the refusal to give the several charges requested by it.

G. L. Comer, for appellant.—1. The court erred in admitting the testimony of Harrison as to his conversation with Dean.—3 Brick. Dig. 35, § 108; Ib. 22, § 54.

2. Dean & Co. were local insurance agents or brokers, and had no authority in respect to the policy sued on, except to countersign it, collect the premium thereon and deliver it to appellee, and after such delivery, they had discharged their duty, and their authority ceased.— *Queen Ins. Co. v. Young*, 86 Ala. 424; *Cen. City Ins. Co. v. Oates*, 86 Ala. 558; *Fire Ins. Co. v. Felrath*, 77 Ala. 194; *Phoenix Ins. Co. v. Copeland*, 90 Ala. 386; *Bobbitt*

v. Ins. Co., 66 N. C. 70 ; Cleaver v. Trader's Ins. Co., 15
Amer. St. Rep. 275 ; 8 Amer. St. Rep. 908 ; Roumage v.
Ins. Co., 1 Green (N. J.) 110 ; Lohnes v. Ins. Co., 121
Mass. 439 ; Kyte v. Ins. Co., 144 Mass. 43 ; Duluth Nat.
Bank v. Ins. Co., 1 So. Wes. Rep. 689 ; Ins. Co. v. Blum,
13 So. Wes. Rep. 572 ; Dawes v. Ins. Co., 7 Cow. 462 ;
Ins. Co. v. Brown, 18 So. Wes. Rep. 713 ; Van Allen v.
Ins. Co., 64 N. Y. 469 ; Bush v. Ins. Co., 63 N. Y. 531 ;
Bowlin v. Hekla Ins. Co., 36 Minn. 433 ; Smith v. Niagara
Ins. Co., 60 Vt. 682 ; Barre v. Ins. Co., 76 Iowa 609 ;
Knudson v. Ins. Co., 75 Wis. 198 ; Ins. Co. v. School Direc-
tors, 4 Ill. App. 145.

3. At the time of the making out of the application
Jordan was the agent of the plaintiff, and was, in no
sense, the agent of the insurance company in writing the
said answers.—3 Brick. Dig., 417, § 156 et. seq. ; Wald-
man v. Ins. Co., 91 Ala. 170 ; Wilson v. Conway, 4 R. I.
141 ; Ins. Co. v. Fromm, 12 Weekly Notes of Cases, 69.

A. H. MERRILL, contra.—1. The insurance company
cannot complain of the false statements contained in the
application as to the condition of the insured's title to
the property.—Wes. Assur. Co. v. Stoddard, 88 Ala. 606 ;
Brown v. Com. Fire Ins. Co., 86 Ala, 189 ; Plan. and Mer.
Ins. Co. v. Thurston, 93 Ala. 255.

2. The authority of Dean & Co., as agents of the in-
surance company, was a question of fact to be deter-
mined by the jury.—Clements' Fire Ins. Dig., 438, § §
316, 317 ; Hough v. City Fire Ins. Co., 29 Conn. 10 ; Un-
derwood v. Farmers' Joint Stock Ins. Co., 57 N. Y. 500.

3. Dean & Co., being the resident local agents of the
insurance company, had the right to waive the proof of
loss.—Cen. Ins. Co. v. Oates, 86 Ala. 558 ; Home Ins. Co.
v. Adler, 71 Ala. 516 ; Piedmont & Arlington L. Ins. Co. v.
Young, 58 Ala. 476 ; Firemen's Ins. Co. v. Crandall,
33 Ala. 9 ; Fire Ins. Co. v. Felrath, 77 Ala. 194.

HARALSON, J.—The first and third assignments of
error raise the same question ; first, on the admission of
evidence, and, second, on a motion to exclude it, based
on the same grounds of objection. Dean & Co., of Eu-
faula, were the agents of the company which issued this
policy. The plaintiff knew them, and never had any com-
munication with the home office, so far as appears, in

procuring the policy. The company is foreign, having its corporate residence in Minneapolis, Minnesota. It transacted its business in this State, in Eufaula, through the agency of Dean & Co., and if it had other agencies in the State it was not shown. These agents accepted service of this summons and complaint, from which we are authorized to infer that they were the appointees of the foreign company, to accept such service, under section 1201 of the Code. They were certainly supplied with the blanks of the company, as appears from the application for and the policy issued under it, both of which are dated the same day—the 20th of November, 1891— the application being signed by the agents alone, and by the president and secretary with lithograph signatures, as appears from the original paper, attached by agreement to the record, and countersigned by the agents, L. Y. Dean & Co. No written authority or power of attorney under which these agents acted and represented the defendant was introduced by defendant, or otherwise shown on the trial, nor was there parol evidence, introduced by defendant, of the character and extent of the agency, further than the bill of exceptions states, that the defendant introduced evidence tending to show "that said Dean & Co. was a firm of insurance solicitors composed of L. Y. Dean and E. M. Cargill, that they only had authority from defendant to solicit insurance, and countersign all policies issued through their agency, and to countersign the policy in this case, when issued by the defendant, and that after the policy sued on was delivered to the plaintiff, they had no authority to adjust or settle in any manner any loss under the policy and had no authority to alter, change or waive any part of or condition in the policy, and had no authority whatever in the matter after the policy was delivered by them to plaintiff." It was not shown that these instructions or limitations of authority were ever communicated, directly or indirectly, to plaintiff, or that she or her agent knew anything of them.

We have, then, evidence on the part of the plaintiff, tending to show that Dean & Co. were the general agents of the defendant, especially so far as appearances indicated, and on the part of the defendant, that they were special agents with special instructions, limiting their powers. Now, a special agent has no right, even as to third per-

sons, to bind his principal, beyond the powers of his
agency ; and those dealing with him, must, at their peril,
ascertain the extent of his authority.—3 Brick.Dig., 22 § 54,
1 Amer. & Eng. Encyc. of Law, 252. Out of the usual
course of business, the assured must be sure the agent
has express authority. His authority as to third per-
sons, is governed by the nature of his business. Acts,
waivers, representations, &c., in the usual course of busi-
ness will, as has been repeatedly held, bind the principal
in spite of private instructions, unless the other party
had notice of them ; and the authority of an agent, as
to those with whom he deals, is what it appears to be,
and the question is, not what power the agent did have,
but what the company held him out as having. As we
said on this subject, in one of our cases, the principal,
in the appointment of an agent, is regarded as saying
to the public, that he has the power to transact the busi-
ness in the usual and customary modes, and "secret limi-
tations on his power, or private instructions as to the
mode of transacting the business, will not affect the right
of third persons who have no notice of such limitations or
instructions. When the general agent transacts the busi-
ness intrusted to him, within the usual and ordinary
scope of such business, he acts within the extent of his
authority, and the principal is bound, provided the party
dealing with the agent acts in good faith, and is not
guilty of negligence which proximately contributes to
the loss."—*Louisville Coffin Co. v. Stokes*, 78 Ala. 372;
*Gibson v. Snow Hardware Co.*, 94 Ala. 346; *The Mont-
gomery Furniture Co. v. Hardaway*, ante, p. 100; *Piedmont &
Arlington Ins. Co. v. Young*, 58 Ala. 476; 1 May on Insur-
ance, §§ 126, 144; 1 Am. & Eng. Encyc. of Law, 350,
353.

2. Of these two classes of agents—special and gen-
eral—Mr. May observes, that "a general agent in the
strict legal sense, is one who has all the powers of his
principal as to the business in which he is engaged—an
extent of authority not often conferred in insurance. In
that business, an agent is termed a general agent rather
with reference to the geographical extent of his author-
ity, in contradistinction to a local agent, who may have
original powers, though exercising them within more
restricted limits ; and a general agent may appoint local
and sub-agents which a local agent can not. But there

seems to be no very well defined distinction between the powers of general agents, local agents and sub-agents, and, therefore, they may become, in any case, a question of fact for the jury."—1 May on Ins., § 126. If the authority of the agent and its extent is not evidenced by a written instrument, but rests in parol and is a matter of disputed fact, then it becomes a question of fact for the jury and not of law for the court.—*Foley v. Felrath*, 98 Ala. 176; *S. & N. Ala. R. R. Co. v. Henlein*, 52 Ala. 610; *Hough v. Ins. Co.*, 29 Conn. 11; *Nicoll v. Ins. Co.*, 3 Wood & Min. C. C. Rep. 533; *Keenan v. Ins. Co.*, 12 Iowa, 131.

3. We have referred to the facts tending to show the extent of the agents' authority in this case, that they were general, and extended not only to the matter of contracting for insurance, but to attending to all other matters necessary and proper to be attended to in and about the particular insurance. To whom did plaintiff naturally turn, when her property was destroyed? To the company in Minneapolis, which she knew nothing of, except through these agents? or to the agents who represented the company in providing her the insurance? And to whom, in all the world, would the company itself, more naturally turn for information in respect to the loss, than to its agents in the neighborhood of the loss? and who so competent as they, to serve the company in receiving notice of, and having the loss properly and honestly adjusted? Would not this duty appear to the general public to lie naturally within the legitimate and proper scope of the powers of these agents? Who, except some one learned in the law, or trained in insurance business and technicalities, would have acted differently from the plaintiff, in trusting these agents and relying on what they told her as to making proof of her loss? "Insurance policies are framed by companies with great care and caution, with a view of limiting their liability as much as possible; and in most cases impose conditions and duties on the assured, to be performed with marked particularity. They should be, and are liberally construed in favor of the assured; which conditions are strictly construed against the insurer."— *Piedmont & Arlington Ins. Co. v. Young*, 58 Ala. 487.

And again it has been said: "The powers of the agent

are *prima facie* co-extensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company establishing a local agency, must be held responsible to the parties with whom they transact business, for the acts and declarations of the agent within the scope of his employment, as if they proceeded from the principal."—*Insurance Co. v. Wilkinson*, 13 Wal. 222, 234; *Miller v. The M. B. L. Ins. Co.*, 31 Iowa 216, 226.

There was no error in admitting the evidence of the witness Harrison, and in refusing to exclude it. If Dean & Co. were the general agents of defendant, a question properly for the determination of the jury, under instructions, this was competent evidence of a waiver of the proof of loss. The objections to the evidence were specific, and not one was based on any alleged ground of irrelevancy, or that there was a variance in the proof offered and the allegations of the replication.

3. There was no error in admitting the evidence of Cooper, that at the time he made the application, he told the agent that the land was mortgaged to the loan company. Jordan, a clerk in the office of the agents, took down the answers of Cooper to the questions propounded, but it was done by the direction of one of the agents, who was present a part of the time the examination of Cooper was being conducted, and heard a part of it, while the other agent, Cargill, sat near by, within a few feet, all the while, but not engaged in examining Cooper. It was also shown that Jordan solicited policies, took applications and collected premiums on policies issued by the company. Whether or not, Dean, or his partner, heard and knew all that passed between Cooper and Jordan, was a question of fact for the jury, under instructions from the court. But, in addition to that, as it has been held, "Agents of insurance companies authorized to contract for risks, receive and collect premiums and deliver policies, may confer upon a clerk or subordinate authority to exercise the same powers. The service is not of such a personal character, as to come under the maxim, *delegatus, non potest delegare*."—1 May on Ins., §§ 154, 154 A ; *Bodine v. Exchange Fire Co.*, 51 N. Y. 117 ; *Eclectic L. Ins. Co. v. Fahrenkrug*, 68 Ill. 463 ; *Continental L. Ins. Co. v. Goodall*, 5 Bing. L. & Acc. Ins. Cases 422 ; *Mayer v. Mut. L. Ins. Co.*, 38 Iowa,

304; *Planters' Ins. Co. v. Myers*, 55 Miss. 479; *Cooke v. Ætna Ins. Co.*, 7 Daly (N. Y.) 555.

May lays down the proposition, supported, by a vast array of authorities, sanctioned expressly by this court, that "It has been very generally held, that knowledge by, or notice to the agent, of the inaccuracy of a statement in the application upon which a policy is issued after such notice or knowledge, binds the company, and prevents them from availing themselves of the inaccuracy in defense ; some of the cases regarding the facts as amounting to· a waiver, and others as working an estoppel *in pais*. And this is true, even though the policy provides that when the application is made through an agent of the company, the applicant shall be responsible for such agents' representatives."—1 May on Ins., §§ 143, 144, 144c.; Wood on Fire Ins., § 152; *Western Ass. Co. v. Stoddard*, 88 Ala. 611; *Phoenix Ins. Co. v. Copeland*, 90 Ala. 386; *Com. Fire Ins. Co. v. Allen*, 80 Ala. 571; *Merchants Ins. Co. v. Thurston*, 93 Ala. 256; *Planters' Ins. Co. v. Myers*, 55 Miss. 480.

4. The court charged the jury at length, covering the different issues in the case, under the evidence offered, which charge covers more than two and one half pages of the transcript, and is divided into five sections. "The defendant then· and there severally and separately excepted to each and every section, and each and every paragraph of said charge as given." We have quoted the language in which the exception was reserved. This was a mere general exception, and unavailing, unless the charge was erroneous in all of its propositions, which was not the case.—3 Brick. Dig. 80, §§ 35, 36, 37 ; *S. & N. A. R. R. Co. v. Jones*, 56 Ala. 507; *Mayberry v. Leach*, 58 Ala. 339; *Elliott v. Dycke*, 78 Ala. 157; *Richmond & Danville R. R. Co. v. Jones*, 92 Ala. 225; *Espalla v. Richard & Sons*, 94 Ala. 159.

5. There was no error in refusing the 2d charge requested by defendant. The replication to the plea on which this charge is based, on which issue was joined, was that the fire occurred at night, when persons on the premises near the gin-house were asleep, and that when the first person discovered the fire it was too late to save the building with the aid of the barrel of water, buckets or otherwise.; and there was evidence by the plaintiff,

tending to establish the truth of the replication, which the charge ignores.

The remaining charges, 3, 4, 5, and 6, each, ignore the facts relied on in the replications to the pleas of the defendant, on which issue was joined, and which there was evidence tending to establish.—*Liberty Ins. Co. v. Boulden*, 96 Ala. 508; *Western Ass. Co. v. Stoddard*, 88 Ala. 611; *Piedmont & Arlington Ins. Co. v. Young*, 58 Ala. 486; *Queen Ins. Co. v. Young*, 86 Ala. 431; *P. & M. Ins. Co. v Thurston*, 93 Ala. 257; *Planters' Ins. Co. v. Myers*, 55 Miss. 479.

Affirmed.